IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**YANISSE ADRIAN SILVA**,

Plaintiff,

v.

**MANLEY BERENSON MONTEHIEDRA
MANAGEMENT, et al**,

Defendants.

CIVIL NO. 03-1890(JAG)

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

On April 4, 2005, Ranger American (hereinafter "Ranger") and its insurer ACE Insurance Company (hereinafter "ACE") filed a Motion for Summary Judgment (Docket No. 115). On April 5, 2005, co-defendants Manley Berenson Montehiedra Management (hereinafter "Manley Berenson") and Continental Casualty Company (hereinafter "Continental") filed their Motion for Summary Judgment (Docket No. 116) with a Statement of Uncontested Material Facts (Docket No. 118) and later submitted a Substitute Brief in Support of their Motion for Summary Judgment (Docket No. 120).

On April 18, 2005, plaintiff's Response in Opposition to Summary Judgment and to Statement of Uncontested Facts to above motions were filed (Docket Nos. 127, 128, 129, 130). Replies and sur-replies were authorized by the Court (Docket Nos. 144, 150). On September 9, 2005, Massó Expo Corporation (hereinafter "Massó") submitted its Motion for Summary Judgment (Docket No. 187). Then, plaintiff filed her Response in Opposition (Docket No. 195).

On September 12, 2005, the Court referred these motions for report and recommendation (Docket No. 189).

## II.  BACKGROUND

Plaintiff Yanisse Adrian Silva was a passenger in a vehicle located in the parking lot of the Montehiedra Shopping Mall on August 21, 1998, where she was the victim of a violent crime;  she was therein shot and became paraplegic.  Ms. Adrian Silva was a minor at the time of the incident and her custodial parents submitted on their own and on Ms. Adrian Silva's behalf and other minor siblings a state civil action in the Superior Court of the Commonwealth of Puerto Rico, San Juan Part.  After some procedural events, adult plaintiffs sought dismissal, without prejudice.  Since minors were involved, the state court held on July 9, 2002 a hearing on judicial authorization in regard to the minors with the assistance of the Special Prosecutor for Family Affairs.  At said hearing Ms. Adrian Silva, who had become of age as of January 27, 2002, indicated she would also request dismissal, without prejudice, of her claim.  The state court entered an order on same date granting judicial authorization for the dismissal of all the remaining plaintiffs' claims, including Ms. Adrian Silva's claim.  On September 30, 2002, the judgment thereof was notified.

On August 19, 2003, plaintiff Ms. Adrian Silva filed this federal claim, considering she had tolled the statute of limitations by the filing of her state judicial claim on August 20, 1999.  Co-defendants request summary disposition on averments that plaintiff's  complaint was filed more than one year from the state hearing on July 9, 2002, which approved the dismissal of the claims filed by the minors children and herein plaintiff's claims, for which the one year statute of limitation applicable to tort action had expired.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v.  Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir., 1997).  After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v.  Corporación Insular, 111 F.3d 184, 187 (1st Cir.  1997).  A fact is deemed "material" if it potentially could affect the outcome of the suit. Id.  Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id.

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v.  Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir., 1994).  There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar.  Shipping Auth., 835 F.2d 932, 936 (1st Cir., 1987).  In fact, "[o]nly if the

record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co.  v. Hayes, 116 F.3d 957, 960 (1st Cir., 1997).

When considering this motion, unsettled issues of motive and intent as to the conduct of any party will normally preclude the Court from granting summary judgment.  Mulero-Rodríguez v.  Ponte, Inc., 98 F.3d 670, 677 (1st Cir., 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury") (internal quotation marks omitted) (citation omitted); see also Tew v.  Chase Manhattan Bank, N.A., 728 F.Supp.  1551, 1555 (S.D.Fla.  1990) ("Certain issues such as fraud, intent, and knowledge lend themselves to trial, rather than summary judgment.  These matters can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun.'").  However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences [or] unsupported speculation." Ayala-Genera v.  Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996).

In evaluating these cases, a "court may consider any material that would be admissible or usable at trial." See 10A Charles Alan Wright Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure §2721, at 361 (3d ed.1998). "But the court should do no more than this in reviewing the quality of the evidence. Most critically, it must never 'weigh the evidence and determine the truth of the matter....' " Lipsett v. University of P.R., 864 F.2d 881, 895 (1st

Cir.1988) (quoting Anderson v. Liberty Lobby Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986)). The court should " 'look at the record ... in the light most favorable to ... the party opposing ... the motion' ... [and] indulge all inferences favorable to the party opposing the motion." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir.1975) (*quoting* Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct. 486 (1962)). "If, after this canvassing of the material presented, the district court finds that some genuine factual issue remains in the case, whose resolution one way or another could affect its outcome, the court must deny the motion." Lipsett, 864 F.2d at 895 (*citing* Anderson, 477 U.S. at 242, 106 S.Ct. at 2505). "Summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990). *See* Acevedo Vargas v. Colon, 68 F.Supp.2d 80, 85-86 (D. Puerto Rico 1999).

## IV. ANALYSIS

### A.   Plaintiff's Cross-Motion for Summary Judgment.

Plaintiff avers defendants Manley Berenson and its insurer Continental should be precluded from now claiming the action is time-barred since they waived said affirmative defense.  Said defendants, who did not originally submit the affirmative defense, raised it for the first time in the Answer to the Third Amended Complaint filed over a year after their initial appearance in the case.  Plaintiff submits these co-defendants waived the limitations defense because Rule 8(c) of the Fed.R.Civ.P. requires to plead the limitation defense at the time of their answer or shortly thereafter.

Addrian Silva v.  Manley Berenson Montehiedra Management, et al
Civil No. 03-1890(JAG)
Report and Recommendation
Page 6

### 1. Whether affirmative defenses were waived.

Generally, the penalty for failure to raise an affirmative defense in the pleadings gives way to the pain of possible forfeiture.  *See* Williams v. Ashland Eng'g Co., 45 F.3d 588, 593 (1st Cir.), *cert. denied*, 516 U.S. 807, 116 S.Ct. 51 (1995) (explaining  a party must set forth all affirmative defenses in the pleadings, on pain of possible forfeiture).  [A] defendant who fails to assert an affirmative defense at all, or who asserts it in a largely uninformative way, acts at his peril." Williams v. Ashlad; *see also* Fed.R.Civ.P. 8(c). Torres v. KMart Corp., 233 F.Supp.2d 273, 284-285 (D. Puerto Rico 2002).

However, in this case, by filing an amended complaint, plaintiff effectively triggered a new obligation for all defendants to file a subsequent responsive pleading either by an answer to the amended complaint or a motion to dismiss.  The fact that defendants Manley Berenson and Continental did not raise the limitations defense in their original answer to the complaint does not mean they waived the same, as proposed by plaintiff, so long as the defense was properly and timely raised in their answer to plaintiff's third amended complaint. Fed.R.Civ.P. 12(b)(6); Wright & Miller, *Federal Practice and Procedure: Civil 2d § 1349* (West, 1990). Vélez-Arocho v. Jardín, 2005 WL 1640680  (D. Puerto Rico 2005) (*holding* that a defendant who fails to raise exhaustion of administrative remedies in response to a previous complaint does not waive the affirmative defense so long as the defense is timely raised in response to a subsequently amended complaint).  *See* Legal Aid Soc'y v. City of New York, 114 F.Supp.2d 204, 222 (S.D.N.Y.2000); *see also* Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 1999).

Accordingly, it is this Magistrate Judge's contention that defendants Manley Berenson and Continental, who raised the limitations defense in the answer to plaintiff's third amended complaint, are not precluded from raising said affirmative defense.

### 2. Whether the law of the case doctrine applies.

Plaintiff also submits co-defendants should be prevented from raising their defense on statute of limitations grounds under the law of the case doctrine since the Court had already granted plaintiff's former motion to strike, which included striking the statute of limitations defense (Docket 60).

First, the law of the case doctrine invoked by plaintiff herein is a prudential, not obligatory, rule which considers that the same court will ordinarily not revisit an earlier ruling made in the same case. *See* Conley v. United States, 323 F.3d 7, 12 (1st Cir. 2003); *see also* Tejada-Batista v. Morales, 424 F.3d 97, 101 (1st Cir. 2005).  Still, such governing law of the case arguably permits a Court  to reexamine its own prior determination at a later stage of the same case, if deemed appropriate.  *See* United States v. Moran, 393 F.3d 1, 7-8 (1st Cir. 2004); *see also* United States v. Pérez-Ruíz, 421 F.3d 11, 14 (1st Cir. 2005).

Secondly, the other branch on the law of the case provides that "unless corrected by an appellate tribunal, a legal decision made at one stage of a civil or criminal case constitutes the law of the case throughout the pendency of the litigation." Flibotte v. Pa. Truck Lines, Inc., 131 F.3d 21, 25 (1st Cir. 1997). This means that a court ordinarily ought to respect and follow its own rulings, made earlier in the same case. *See* Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382 (1983) (explaining that "when a court decides upon a rule of law, that decision

should continue to govern the same issues in subsequent stages in the same case"). This branch of the doctrine frowns upon, but does not altogether prohibit, reconsideration of orders within a single proceeding by a successor judge. *E.g.*, Flibotte, 131 F.3d at 25.

A perusal of the order issued on October 8, 2004, granting plaintiff's Motion to Strike (Docket No. 50) and finding as moot defendants' Motion for Extension of Time to File Response/Reply (Docket No. 55), cannot be construed as the law of the case as promoted by plaintiff. Neither would be the law of the case applicable to this Magistrate Judge's order striking allegations deemed scandalous or immaterial  (Docket No. 132).[1]  The order addressed defendant's allegations regarding the personal life and/or civil status of a victim, not affirmative defenses which plaintiff now considers to have been waived.  As such, these orders do not support plaintiff's conclusion on having established the law of the case.

Thus, plaintiff's claim that the law of the case would not allow defendants' statute of limitations defense, is not appropriate under the law of the case doctrine.

**B.  Co-defendants Manley Berenson, Continental and Ace's Motions for Summary Judgment.**

Having already discussed that defendants have not waived their affirmative defenses, including the limitations statute, and that the law of the case doctrine would not warrant disregard of such defense, the timeliness of this federal action as raised in defendant Manley Berenson and Continental's  summary judgment request, is now considered.  Ranger  and its

---

[1] Ranger filed its substitute answer in conformity with the allegations to be stricken as ordered by this Magistrate Judge on May 4, 2005 (Docket No. 141) and therein also raised as affirmative defense that the action was time-barred.

insurer ACE have also filed a Motion for Summary Judgment limited to the issue that plaintiff's federal claim is time barred (Docket No. 115).

Co-defendants aver the one year statute of limitations applicable to tort actions, such as the one filed by plaintiff Ms. Adrian-Silva, had expired by the time she filed her federal complaint.  It is their contention that the latest date applicable under the P.R. Laws Ann., Title 31, Section 5292, one-year limitation, should have ended either on February 11, 2002, when plaintiff's parents filed their motion for voluntary dismissal of their state action, or the latest date of July 9, 2002, when state court held the hearing for judicial authorization and entered the order dismissing the minor children's claims, including Ms. Adrian-Silva's action, who was already an adult plaintiff.

The voluntary dismissal of plaintiffs' action is considered by defendants as an agreement under Rule 39.1(a)(2) of the P.R. Rules of Civil P. and which is effective immediately upon filing of same, without need of a court order.  Such agreement results from plaintiff Ms. Adrian-Silva orally ratifying, at the time of the judicial authorization hearing on July 9, 2002, that she was also dismissing her claim.  As such, it is co-defendants' contention that the limitation period should start on July 9, 2002 and expire one year later.  Co-defendants submit this claim is time-barred and there is no genuine issue of material fact regarding untimeliness because plaintiff filed this claim on August 19, 2003.

Plaintiff Ms. Adrian-Silva submits in her opposition that her initial state claim was dismissed without prejudice by judgment issued on July 9, 2002, which notice was served by the Clerk's Office on September 30, 2002.  No agreement was reached or solicited with state

defendants Manley Berenson or Montehiedra Town Center regarding the voluntary dismissal nor did they consent or ask to consent as to said dismissal.  Plaintiff filed her claim before the United States District Court on August 19, 2003, well before the applicable prescriptive period had run on September 30, 2003.[2] All other parties in this federal lawsuit were originally brought as third-party defendants by Manley Berenson.

Plaintiff submits co-defendant ACE's sworn statement in support of its motion for summary judgment does not present uncontested issues of fact against herself.   Plaintiff considers that:  ACE motion is precluded by the law of the case established by previous Court's orders that stroke the statute of limitations argument; the motion is dilatory and failed to comply with the Court's orders regarding summary judgment; plaintiff's claim is not time-barred under Puerto Rico law; there was no agreement between the parties and local court documents fail to make reference to such an agreement.

Plaintiff argues in her opposition that the tolling of her claim would be appropriate since she filed a state action that was closed upon the Court granting the requested dismissal on July 9, 2002,  after a hearing, and the judgment thereof was notified on September 30, 2002.  Since this federal action was filed within the one-year period since notice, it should be considered timely.

In an action for damages brought about by an unlawful attachment, the one-year statute of limitations is tolled from the moment the action is filed until the date the judgment of dismissal without prejudice is rendered. <u>Silva Wiscovich v. Weber Dental Mfg. Co.</u>, 19 P.R.

---

[2] On January 21, 2004, co-defendant Manley Berenson filed a third-party complaint against Massó.

Offic. Trans. 592 (1987).  In Feliciano v. A.S.A., 93 P.R.R. 638 (1966), the Supreme Court of Puerto Rico held that the statute of limitations in an action for damages was tolled by the mere filing of the complaint. Hence,  it was not necessary to summon the defendant and the Puerto Rico Highest Court acknowledged that the principle of interruption is the unmistakable manifestation of one, who threatened with the loss of his right, expresses his wish not to lose it. *Id*. at 643.  Thus, the statute of limitations starts to run again when the action that tolled it ends. Silva 19 P.R.R. Offic. Trans. at 600.  Likewise, in Fresh-O-Baking Co. v. Molinos de P.R., 103 D.P.R. 509, 516 (1975), it was held that in an action for damages brought about by an unlawful attachment, the one-year statute of limitations was tolled from the moment the action was filed until the date the judgment of dismissal without prejudice was rendered.

At first light, it would seem that plaintiff's action would not be barred since the judgment of voluntary dismissal was notified on September 30, 2002, and her federal claim was filed on August 19, 2003, well within the one-year limitation.  However, defendants' contention is that the date when plaintiff informed of the voluntary dismissal on July 9, 2002, without any need for a Court order to follow, should be the date to be counted towards the time limitations.

The Puerto Rico Supreme Court has clarified a nuance as to tolling when voluntary dismissal is requested under Rule 39.1 (a)(1) of the Puerto Rico Rules of Civil Procedure.

Rule 39.1 (a)(1) provides that:

> [A]n action may be dismissed by the plaintiff without order of the court (1) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs...  32 L.P.R.A. App. III, R. 39.1(a)(1).

Dismissal thereunder is effective immediately and does not require any action by the court.  *See* García Aponte v. E.L.A., 135 D.P.R. 137 (1984); Tenorio Betancourt v. Hospital Dr. Pila, 2003 WL 21537791, 2003 TSPR 112 (2003).

Such is not the situation applicable to the instant case since at the time plaintiff requested dismissal, numerous procedural events had been undertaken, defendants had been served, and filed their answers, as well as summary judgment motion had been entertained by the Court.

Likewise, when a dismissal is predicated on the parties settlement or stipulation under Rule 39.1 (a)(2), the Court need not take any action. The mechanism for a dismissal by stipulation of the parties is shown to become effective immediately:

> ...
> (2) by filing a stipulation of dismissal signed by all parties who have appeared in the action.

*See* Citibank N.A. v. Dependable Insurance Co., 21 P.R. Offic. Trans. 496, 121 D.P.R. 503 (1988).

The Puerto Rico Supreme Court has thus established the computation of the prescription term for actions dismissed under above Rule 39.1 (a), is the date of notice of dismissal filed by plaintiff.  Neither the provisions of Rule 39.1 (a)(1) nor (a)(2) seem applicable to the instant case since there is no stipulation filed for dismissal nor a settlement agreement that resulted in plaintiff's request for dismissal.  The Supreme Court of Puerto Rico has rejected a defendant's argument that it was dropped from a case merely because the court was informed about a settlement with same, requiring that the court takes an affirmative action as to the settlement informed, reduced same to writing through a partial judgment and said judgment to meet the

Addrian Silva v.  Manley Berenson Montehiedra Management, et al
Civil No. 03-1890(JAG)
Report and Recommendation
Page 13

requirements set forth in previous jurisprudence.  Maxan v. Rodríguez, 19 P.R. Offic. Trans.

685, 1987 WL 448262 (1987).

However, when dismissal is obtained under Rule 39.1 (b), judicial authorization is

compulsory and the prescription term starts counting thereafter, since it is the order of the court

the one that provides termination to the suit.

Rule 39.1 (b) provides for dismissals:

> b)  By order of court.-- **Except as provided by Rule 39.1(a)**,
> an action shall not be dismissed at the plaintiff's instance except
> upon order of the court and upon such terms and conditions as
> the court deems proper. Unless otherwise specified in the order,
> a dismissal under this subsection is without prejudice.  32 Ap. III.
> (emphasis supplied)

*See* Agosto Ortíz v. Municipality of Río Grande, 143 D.P.R. 174 (1997), 1997 WL

289933.  The latter distinguished same from the rationale followed by García Aponte where

dismissal would become effective immediately.  The requisite for a court order to grant such a

dismissal is accentuated also under the statement of Rule 39.3, regarding dismissals of counter-

claims, cross-claims and third-party claims, which gives emphasis to voluntary dismissal by a

claimant alone, that is, absent a stipulation or settlement, is to be made before any responsive

pleading.[3]

Defendants' averment that plaintiff's oral request for voluntary dismissal should be

construed as some kind of settlement or stipulation is also deemed contrary to Rule 39.1(b)

---

[3] A voluntary dismissal by the claimant alone pursuant to Rule 39.1(a) shall be made before a responsive pleading
is served, or, if there is none, before the introduction of evidence at the trial.  PR ST T. 32 Ap. III, R. 39.3

interpretation in <u>Agosto Ortíz</u>, 143 D.P.R. at 174  Therein, the dismissal was made in writing, but was held one that could not fall under either of the exceptions of Rule 39.1(a), that is, the complaint had already been answered and the request for voluntary dismissal was signed solely by said plaintiff.  As such, it was deemed as  a dismissal under Rule 39.1(b), since it was a situation evidently not covered by any of the items provided by Rule 39.1 (a)(1) or (a)(2).

Furthermore, the definitions of what is considered settlement or stipulation clearly appear back in 1987 in the rationale expounded in  <u>Citibank v. Dependable Insurance Co.</u>, 21 P.R. Offic. Trans. 496, 121 D.P.R. at 503.  It would require reciprocal concessions and must be made because there is a bilateral contractual nature to a settlement. *See* XXII-2 M. Albaladejo, *Comentarios al Codigo Civil y compilaciones forales* 11, Madrid, Ed. Rev. Der. Privado (1979).[4]

When an order of a court becomes necessary or is issued in any case, it becomes effective, by operation of law, once it has been registered and notified by the Clerk.  In this case, there was no settlement or stipulation when plaintiff requested voluntary dismissal. Since plaintiff's dismissal would not have fallen under Rule 39.1(a) (1) nor (a)(2), and absent a stipulation by the parties, dismissal would fall upon order from the court and as such, after proper notice by the Clerk on September 30, 2002.

In light of above discussed, plaintiff's claim filed before this Court on August 19, 2003

[4] ... And finally, reciprocal concessions must be made.  This is the element which imparts the bilateral contractual nature to the settlement.  The purpose of a settlement "is only reached when the parties sacrifice their intentions in the controversy ... but nothing obliges that the reciprocal concessions be perfectly equivalent ... These sacrifices may be moral or pecuniary, and must be reciprocal because otherwise it would boil down to a mere waiver <u>Albaladejo</u>, supra, at 17. <u>Citibank v. Dependable,</u> 21 P.R. Offic. Trans. 496, 121 D.P.R. at 503.

is not considered to be time barred.  Thus, it is recommended that co-defendants Manley Berenson, Continental and ACE's request for summary disposition BE DENIED.

## C.  Co-defendant Massó's Motion for Summary Judgment.

Massó was initially brought to this action as a third party defendant by Manley Berenson and its insurer Continental.  Massó is the successor to the Builder Square's lease at the Montehiedra Shopping Center.  Plaintiff subsequently amended the complaint to bring defendant Massó also as a party.

Massó is a corporation, that at the time of the incident affecting plaintiff, was the tenant of the area originally leased by Builders Square upon a lease agreement dated April 18, 1997. The lease agreement identifies the common areas under the lessee's control and are therein described in Exhibit B.  Massó had retained the services of Executive Security Services to provide security services for its common areas.  Massó's assigned parking spaces are on the front side of the building.

Massó submits that plaintiff was not a customer of Massó and it is undisputed she was present at the Montehiedra Town Center to attend a movie.  As undisputed facts Massó avers plaintiff Ms. Adrian-Silva and her boyfriend arrived at the Montehiedra Town Center around 10:00 p.m. on April 21, 1998. Massó had been closed for over one (1) hour when the incident object of this  complaint occurred in the parking lot.  The affected parties parked the car between the movie theater and the building at the time occupied by Massó, whose store had closed that day by 9:00 p.m.  Plaintiff stayed inside the vehicle for fifteen (15) to twenty (20)

minutes before the shooting incident ensued. Massó contends that the area where the incident occurred is not within the common area described in its lease agreement and it never assumed the responsibility of the landlord to provide or pay for security therein nor did it conduct commercial activities in the area where the incident took place, which is the parking area on the side between the movie theater and Massó's store premises.  Massó states it had no knowledge of violent crime activity in the area or on Massó's premises prior to the incident which affected plaintiff.  Massó was never put on notice about the incident object of the complaint nor interviewed by the Puerto Rico Police or any other entity until it was served with the third-party complaint (Docket No. 187).

Thus, allegations against co-defendant Massó by plaintiff and the third-party plaintiff are predicated on allegations of some kind of a contractual obligation regarding the premises and its control over the area where the violent act occurred.

Plaintiff Ms. Adrian-Silva submitted her opposition to co-defendant Massó's Motion for Summary Judgment in that the cause of action should not be contingent upon any contractual relationship between Massó and Manley Berenson but as an independent claim by plaintiff's third amended complaint since the incident occurred adjacent to or in close proximity to Massó's property.  Plaintiff further alleges Massó must have had notice of criminal activity at the Montehiedra Town Center, including vehicle thefts, robbery, and illegal appropriations, but had not provided adequate security of its adjacent parking area where the incident occurred nor provided a guard in the security tower of its parking lot notwithstanding a high rate of vehicle

Addrian Silva v.  Manley Berenson Montehiedra Management, et al
Civil No. 03-1890(JAG)
Report and Recommendation
Page 17

theft.  Plaintiff submits co-defendant Massó's statement to the contrary as to its lack of knowledge of violent crimes in the area is disputed since the high rate of car theft and its relation with the carjacking endured by plaintiff should be a factual issue for a jury to conclude, as well as the adequacy of the security actions taken, in light of plaintiff's incident being foreseeable  (Docket No. 195).

Plaintiff's statement of contested facts in opposition similarly submits the duty of care of Massó was breached for failing to provide adequate security as a result of the foreseeable criminal conduct in the area.  Plaintiff was parked in the space right next to the Massó's Building, on the side of Massó's premises, which was part of the parking lot at the Montehiedra Town Center.  Massó had been informed by letter of Guillermo Cruz to Angel Brito of November 6, 1998 and letter Richard Axtmayer to Gildo Massó of March 26, 1998 (Exhibit E) that this was their responsibility (Plaintiff's statement ¶¶ 1, 5, 15, 16).

Massó's reply to plaintiff's opposition asserts that plaintiff's third amended complaint is not an independent cause of action against Massó but one totally depending on the issue of who controlled the area where the incident occurred.  Plaintiff has not opposed co-defendant Massó's Exhibit B which demarcates the common areas assumed by Massó.  Plaintiff's claims against Massó are predicated solely in that the incident occurred "right next to, adjacent to and in close proximity of the property of Massó".  (Third Am. Complaint ¶32, Docket No. 227).  Massó further submits that the letter claimed by plaintiff, Exhibit A, of Guillermo Cruz to Angel Brito, makes no such reference to the side area where plaintiff had been parked, but solely to

the front side, rear side of the building, and parking lot.  As to the car thefts, the letter referred

by plaintiff as Exhibit A, is one dated several months after the events in this case, November 6,

1998, and therein mentions car thefts as "starting to become commonly reported", without

making any reference to the parking lot within Massó's premises.  Massó's reply ¶¶5-8.

Additionally, plaintiff's statements through Mr. José Reyes, the driver of the parked vehicle

where plaintiff Ms. Adrian-Silva was injured, indicate not being invitees of Massó since the

incident did not take place within Massó's premises, its parking area, its common area, nor

during its operation hours. *Id.* 9-11.[5]

Massó's request for summary disposition is rooted on plaintiff's failure to establish it

owed a duty of care in regard to the claims of acts of negligence or omissions.  Massó had no

control of the area where the incident occurred, had never been required by Manley Berenson

under the lease agreement to provide security or maintenance to said area and only Manley

Berenson was privy to the incident reports as to previous criminal activity and Massó was never

informed or notified . *Id.* ¶¶12-16.  In fact, the incident report regarding plaintiff's injuries were

prepared by Ranger, Montehiedra Town Center's security guard company, and the report was

not notified to Massó.

In Plaintiff's sur-reply, she claims there are factual issues in controversy which could be

established by her security expert Mr. Robert Williams, in contravention to Massó's opposition

relying on same expert.  Plaintiff submits Mr. Williams' deposition had not been taken nor was

---

.         [5]  Masso's store and facilities closed the day of the incident at 9:00 p.m. The events originating the complaint
transpired more than an hour and fifteen minutes after this time.

available by the time plaintiff's opposition was filed.  Co-defendant Massó indicated Mr.

Williams' testimony was to the effect that Massó had no duty to provide security to neighbor

(William's depo. p. 8).  Plaintiff's contention is that, if additional security on Massó's parking lot

would have been available, it would have had an effect on the security of the parking lot as a

whole causing a deterrence and decreasing the possibility of plaintiff sustaining injuries.

Plaintiff's argument is based on her expert's statement that additional security was necessary in

the parking lot of the Montehiedra Town Center.  (William's depo pp. 223, 227)  (Docket No.

232).

Plaintiff's sur-reply includes numerous pages of the deposition of its own expert witness,

Mr. Williams, which defeat the main contention regarding Massó's liability on this case.  Mr.

William's testimony indicates, among others; having no evidence of Massó having knowledge

of prior carjacking incidents in the area; plaintiff's incident did not occur at Massó's parking

lot; there is no visibility from the security tower located at Massó's parking lot to the place

where the incident took place; he could not tell if plaintiff's vehicle ever passed near Massó;

and he could not specifically say what was Massó's negative acts or omissions that

contributed to plaintiff's injuries (William's depo pp. 219-220, 222-223, Docket No. 232).

Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. sect. 5141 provides in

pertinent part: "A person who by an act or omission causes damages to another through fault

or negligence shall be obliged to repair the damage so done."  The substantive law of Puerto

Rico governs the issue of negligence in this diversity suit. *See* Erie R.R. v. Tompkins, 304 U.S.

64, 78, 58 S.Ct. 817, 822 (1938); <u>Daigle v. Maine Med. Ctr., Inc.</u>, 14 F.3d 684, 689 (1st Cir. 1994)

When plaintiff charges a defendant with an omission for causing damages, plaintiff must prove as a threshold that said defendant had a duty to act to avoid the harm. <u>Sociedad de Gananciales v. González Padín</u>, 118 D.P.R. 94 (1986), 1986 J.T.S. 23; <u>Dopico-Fernández v. Grand Union Supermarket</u>, 841 F.2d 11, 13 (1st Cir. 1988).  Though the existence of a lease does not bar application of the general tort liability or other statute, it "may more or less affect the rights and obligations of the parties." <u>Torres v. Fernández</u>, 56 P.R.R. 459, 470 (1940). *See* <u>Fireman's Fund American Insurance Co. v. Almacenes Miramar, Inc.</u>, 649 F.2d 21, 25 (1st Cir. 1981); <u>Dopico-Fernández</u>,  841 F.2d at 14.

The clear rule in Puerto Rico is that an owner of an establishment is potentially liable for all injuries occurring in areas where he has retained control, including areas used in common by the owner's tenants.  *See, e.g.*, <u>Cotto v. C.M. Insurance Co.</u>, 116 D.P.R. 644 (1985); <u>Aponte Betancourt v. Meléndez</u>, 87 P.R.R. 619 (1963); <u>Goose v. Hilton Hotels</u>, 79 P.R.R. 494 (1956).

Likewise, a tenant is not responsible for areas of owner control outside of the leased premises. <u>Dopico-Fernández</u>,  841 F.2d at 15.  The Puerto Rico Supreme Court has also established that "**[w]hen a building consists of several apartments or rooms and they are leased to different tenants, the entrances, foyers, staircases and halls of common use are, except when otherwise provided, in the possession and under the control of the landlord, and, consequently, the responsibility for their conditions**

**and safety rests in the latter**". Santaella v. Licari, 83 P.R.R. 855, 860, 1961 WL 13758

(1961) (emphasis supplied). The landlord retains a duty to keep in reasonably safe condition

those portions of the building, such as halls, approaches, and stairways, **that remain under**

**his control**. (emphasis supplied).  *See* Torres v. Fernández, 56 P.R.R. at 470; Rigual-Quintana

v. United Parcel Service, Co., 195 F.Supp.2d 358, 362 (D. Puerto Rico 2002).

For purposes of summary judgment herein, plaintiff has not raised a genuine issue of

material fact as to Massó's status as a tenant of the Montehiedra Town Center.  Moreover, it is

also undisputed that: the parking lot where plaintiff's incident took place fell outside   the

premises and common areas designated under the lease agreement to Massó; that plaintiff was

not an invitee of Massó at the time of the incident because the store closed over an hour prior

to plaintiff having parked and remaining inside the vehicle for some fifteen minutes prior to the

incident; and that Massó had no control over the area where the incident occurred.  As such,

plaintiff has presented no dispute of facts to contravene Massó's contention of not owing a duty

of care for which it could be considered liable for plaintiff's injury.

Allegations regarding foreseeability and the knowledge of possible violent criminal acts

at the Montehiedra Town Center serve no purpose when defendant Massó's duty or liability as

to plaintiff cannot be initially established.   Even granting full credibility to plaintiff's averment

that Massó may have provided additional security to its parking facilities, even though this site

was not precisely where plaintiff had parked the vehicle, plaintiff's expert testimony indicated

the tower located within Massó's premises for surveillance of activities by Massó's security

guards had no visibility to where plaintiff parked the vehicle.  The deterrence that additional security at Massó's parking area may have as to the mall as a whole, is a possibility, as worded by plaintiff's own expert, not an assurance and evidently speculative.  Even plaintiff's submission of letters regarding Massó's alleged knowledge of prior criminal acts did not support plaintiff's contention since the letter referred was dated subsequent to the events at issue and not worded in reference to the area under Massó's control.

In view of the above, plaintiff's claims as to co-defendant Massó's liability for damages fail to establish the essential burden as to said co-defendant's duty of care to offer protection and security independent from the liability imposed to the landlord or administrator of the mall. Neither has plaintiff been able to establish this co-defendant's liability by virtue of a contract requiring to offer such care or protection to the whole mall area and parking facilities.  Even omissions give rise to a cause of action provided there is a duty to act and such duty is breached.

Accordingly, it is recommended that Massó's Motion for Summary Judgment should BE GRANTED.

## V. CONCLUSION

In view of the foregoing, it is recommended that co-defendant ACE Insurance Company's Motion for Summary Judgment (Docket No. 115) and co-defendants Manley Berenson and Continental's Motion for Summary Judgment (Docket No. 116) be both

Addrian Silva v.  Manley Berenson Montehiedra Management, et al
Civil No. 03-1890(JAG)
Report and Recommendation
Page 23

DENIED; and co-defendant Massó's Motion for Summary Judgment (Docket No. 187) be

GRANTED.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation.

Failure to file same within the specified time waives the right to appeal this order.  Henley

Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792

F.2d 4 (1st Cir. 1986).  *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d

985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role

reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial

hearing, and save its knockout punch for the second round").

In San Juan, Puerto Rico, this 2nd day of December of 2005.

s/**CAMILLE L. VELEZ-RIVE**
**CAMILLE L. VELEZ-RIVE**
**UNITED STATES MAGISTRATE JUDGE**